CALVIN D. SNOW *vs.* LOUIS W. CAPPELLI *et al.*

DECEMBER 18, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

FLYNN, C. J.    This is a petition for a writ of mandamus directed to the respondents and commanding them to open one voting machine used in ward three in the city of Warwick in the election on November 3, 1936, and to make a permanent record of the votes for councilman shown on said machine.

The petitioner, Calvin D. Snow, is a candidate for councilman in ward three in said city.    The respondents are Louis W. Cappelli, who is secretary of state, and others who are members of the city special vote-tabulation committee by virtue of appointments under the authority of Public Laws 1935, Chapter 2195.

The matter was heard together with the case of *Ruerat* v. *Cappelli et al.*, which we have just decided, 56 R. I. 480, but differs therefrom on its particular facts.    As in the *Ruerat* case, evidence was submitted to guide us in the exercise of our discretion in permitting or refusing the filing of this petition and to determine if there was any legal evidence before the committee to support its action. Consequently, as in the *Ruerat* case, we were not concerned primarily with the determination of the weight of any conflicting evidence or with passing upon the credibility of the witnesses appearing before us.

The evidence submitted to us included the record of the proceedings before the respondent committee, at its meeting on November 4, 1936, which record was made by or under the city clerk and is nowhere disputed nor attacked. It discloses, among other things, that the committee had before it, for its own review and tabulation, the election return from ward three which was properly signed and certified by election officials, as prescribed by Chap. 2195, Sec. 18.

Other facts appearing in the record are:    The protest was filed on behalf of the petitioner by counsel who were present primarily to represent other candidates and raised

no question of fraud and made no specific allegation of any illegality in the return or any irregularity in the conduct of the election. No evidence was presented to the committee in support of its protest, outside of the return itself. No offer of proof was made to establish, by other competent evidence, any illegality or irregularity in connection with the return or the election. The committee did not vote to refuse to hear any evidence offered on behalf of the petitioner's protest. But it did vote, on the only evidence before it, namely, the return itself, not to grant the protest or to open the machine in question.

In these particular circumstances, it may readily be seen that the instant case differs materially from that of *Ruerat* v. *Cappelli et al., supra.* In the latter case, the election return was not properly signed and certified by any representative of the Republican party as required by Chap. 2195, and, therefore, carried upon its face the essential refutation of its own purported official character. Notwithstanding a timely and adequate protest directed to the specific defects and illegality of the return, the committee insisted upon using such illegal return as the basis for its own tabulations for final totals in ward seven. It was impossible there for the committee, in the absence of any official return or tabulation from the machine, to perform its primary legal duty without reference to the voting machines there in question.

In the instant case, however, the committee had before it the election return, here in question, which showed on its face that it was actually signed and certified by the proper election officials of ward three, apparently in substantial compliance with the voting-machine law.

The real protest on behalf of the petitioner was addressed solely to the appearance of certain figures entered upon the return. These figures purported to be the number of votes cast in ward three in voting machine, numbered 0711, respectively for the petitioner and for his opponent for councilman. The underlying cause of the

dispute arises from the fact that two different figures appear on the return as the first digit of the number of votes credited to the petitioner, and because two different figures appear also as the first digit of the number of votes credited to his opponent. In other words, the petitioner contends that the return shows his vote in this machine to be *176,* instead of *076,* as found by the committee, and also shows his opponent's vote therein to be *143,* instead of *243,* as found by the committee. The return also shows a tabulation from all machines, used in ward three, of *991* votes cast for the petitioner under the Republican column, and *901* votes cast for his opponent under the Democratic column and 35 additional votes cast for the petitioner's opponent under the column headed "nomination papers". He argues that the return shows no alterations in the figures of these last total tabulations; that the figures of the return, as read by the committee, apparently took 100 votes away from him and added them to his opponent; that the figure *1* in *143* shows plainly that it was made over or changed into the figure *2,* so as to read *243,* in the case of his opponent's vote; and that the figure *1,* in *176,* shows plainly that it had been made over or changed to the figure *0,* so as to read *076* in the case of the petitioner's vote; that these changes are obvious from an inspection of the return and, in and of themselves, constitute a sufficient case as a matter of law to require the committee to grant his request to examine the counters of the machine.

On the other hand, counsel for the respondent contends that the return was *official,* showing upon its face that it was signed and certified by the proper election officials; that the figures entered upon the return, as the number of votes cast in machine 0711 for the respective candidates for the council, were at most open to two different and reasonable interpretations; that, on being called to the attention of the committee by counsel for the petitioner, the matter was fairly considered; that it then became a matter for the judicial determination of the committee as

to whether or not the figure *2* had been superimposed upon the figure *1* in the vote for the petitioner's opponent and whether the figure *1* had been made over into the figure *0*, in the petitioner's vote; that the committee, in accordance with the discretion given to it by Chap. 2195, did not deem it necessary to open the machines in order to perform its duty; and that it used a reasonable interpretation of an admittedly official return in making its decision; that the exercise of the committee's discretion under these circumstances is not wholly arbitrary and is not open to be reviewed on this petition for mandamus, since it cannot be said, as a matter of law, that the action of the committee was wholly arbitrary and an abuse of its discretion.

The sole question, therefore, presented to us is whether the common law writ of mandamus will lie, at this time, to compel the committee to perform its duty solely in the manner specified in the prayer of the petition. It is apparently agreed by counsel that the duty in question is not, under these circumstances, a ministerial one, but falls within the discretion of the committee. Unless we can say, as a matter of law, that the committee was not entitled to use this return from ward three, or that its interpretation of the figures thereon was so wholly arbitrary as to be an abuse of its judicial discretion, mandamus should not be granted. But we cannot justify either of the above conclusions in the existing circumstances. Certainly it would be unusual to say that the committee had no right to use, in its review and tabulations, a return which admittedly was official and which Chap. 2195 specifically authorizes the committee to use as and for a ballot indicating the votes cast in the respective machines. Nor are we justified in holding as wholly arbitrary the committee's interpretation of the figures upon the return, simply because another equally reasonable interpretation was open to it or even because we might make a different interpretation therefrom.

For all that the return showed upon its face, any changes in any of the figures of the purported votes in machine numbered 0711 may well have been made intentionally to reconcile the number of votes shown on the return with the counters of the machine before the return was signed and certified according to law. It is true, of course, that a wholly different conclusion may also be reached, but there is nothing upon the return, in the absence of fraud or other explanation, which would require us to hold that the latter interpretation is the only conclusion.

Where two different interpretations are reasonably open to the committee, we cannot say, in a proceeding such as this, that the committee's adoption of one of them is wholly arbitrary and therefore an abuse of its discretion. To do so would substantially strip the committee of any discretion, notwithstanding certain provisions of Chap. 2195 which, we have reasoned, were intended to vest certain discretion in the special committees. See *Ruerat* v. *Cappelli et al., supra.* It is not necessary to repeat what we have held in the *Ruerat* case concerning the powers, duties and discretion of the special city or town vote-tabulation committee. Nothing has been shown to us in this case to warrant us in making any different construction of the voting-machine law. In this respect, at least, it is equally applicable and controlling in the instant case, excepting only the different facts involved.

In the instant case, because of materially different facts and under the authority of *Ruerat* v. *Cappelli et al., supra,* and in accordance with our understanding of the strict rules relating to the common law writ of mandamus, we are constrained to deny at this time the prayer for the specific relief sought.

In reaching this conclusion, it must be kept in mind that we have limited ourselves to a consideration of this proceeding and to the circumstances previously presented to the committee. Since that time we have had the ben-

efit of evidence which was never offered to or heard by this committee. The purport of this evidence, however, is now known to the respondents as fully as it is to us. It tends to cast a very serious doubt on the integrity of the return. Moreover, the disputed differences in the figures upon the return are sufficient in themselves to change the entire result in this election.

While it would have been manifestly unfair to the committee if we based our decision upon evidence which was heard by us but which never was previously offered to or heard by the committee, we think it would be fair to them to indicate here, by way of *dicta,* our present attitude if the matter were before us upon the same evidence in a proceeding on appeal. In such circumstances as have been above referred to, we would feel that justice would require us to grant substantially the relief which the petitioner has sought.

We do not share the doubt expressed by the petitioner's counsel that we may expect nothing but arbitrary decisions from this committee. The record of the city clerk clearly indicates that a majority of the committee, through its chairman, understood that it was passing upon a matter within its discretion without any evidence which impugned the integrity of the official return. It further indicates that the committee voted upon an understanding that the petitioner's protest was merely to provide a basis for a later appeal. Likewise, counsel for the majority of the committee indicated in open court that the members had become better acquainted with the law and their duties since the meeting and were ready and willing to perform their duties fully in accordance with law. Under the law the committee has discretion to have the machines opened in making their final tabulations. Accordingly, now that the facts are known to the respondents and because these facts, as we have said above, cast very serious doubt upon the integrity of the return from machine numbered 0711, and materially affect the result

of the election, we expect that they will open this machine promptly in order to dispel that doubt.

The court authorizes said Louis W. Cappelli, as secretary of state, to break the seals placed in accordance with the order of this court made on the sixth day of November, 1936, and open said voting machine at any time in accordance with the powers conferred on him by statute.

For the reasons stated in the opinion proper, the petition is permitted to be filed and the prayer of the petition is denied.

*Harold A. Andrews, Edward L. Godfrey,* for petitioner.

*Thomas F. Cooney, Carroll & Dwyer, John P. Hartigan,* Attorney General, for respondents.